**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
In re                                   :        Chapter 11 Case No.
                                       :
ADELPHIA BUSINESS SOLUTIONS, INC., et al.,   :        02-11389 (REG)
                                       :
                                       :
                      Debtors.      :        (Jointly Administered)
------------------------------------------------------------------------x


**DEBTORS' THIRD AMENDED JOINT PLAN OF**
**REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**


WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000


Attorneys for Debtors
and Debtors in Possession


KRAMER LEVIN NAFTALIS & FRANKEL LLP      AKIN GUMP STRAUSS HAUER & FELD LLP
919 Third Avenue                            590 Madison Avenue
New York, NY 10022-3852                New York, NY 10022-2524
(212) 715-9100                             (212) 872-1000


Attorneys for the Official Committee of General    Attorneys for the Secured Noteholder Committee
Unsecured Creditors


Dated: December 8, 2003

# TABLE OF CONTENTS

**Page**

SECTION 1.  DEFINITIONS AND INTERPRETATION..................................................2

    A.  Definitions. ....................................................................................................2

        1.1.  ABIZ ...........................................................................................2

        1.2.  ABIZ Committees ........................................................................2

        1.3.  ACC ............................................................................................2

        1.4.  ACC DIP Claims .........................................................................2

        1.5.  ACC DIP Credit Agreement ........................................................2

        1.6.  Administrative Expense Claim .....................................................2

        1.7.  Allowed.......................................................................................2

        1.8.  Amended By Laws .......................................................................2

        1.9.  Amended Certificate of Incorporation .........................................2

        1.10.  Ballot ..........................................................................................3

        1.11.  Bankruptcy Code.........................................................................3

        1.12.  Bankruptcy Court ........................................................................3

        1.13.  Bankruptcy Rules ........................................................................3

        1.14.  Beal Bank ...................................................................................3

        1.15.  Beal DIP Claims..........................................................................3

        1.16.  Beal DIP Credit Agreement.........................................................3

        1.17.  Business Day................................................................................3

        1.18.  Cash.............................................................................................3

        1.19.  Cash Recovery .............................................................................3

        1.20.  Century Facility ..........................................................................3

        1.21.  Century Facility Claim ................................................................3

        1.23.  Claim ...........................................................................................3

        1.24.  Class ............................................................................................3

        1.25.  Collateral.....................................................................................4

        1.26.  Confirmation Date........................................................................4

        1.27.  Confirmation Hearing ..................................................................4

        1.28.  Confirmation Order......................................................................4

        1.29.  Convenience Claim ......................................................................4

        1.30.  Covered Claim .............................................................................4

1.31. Creditors' Committee ...................................................................................4

1.32. Debtors..............................................................................................................4

1.33. Deficiency Claim ...........................................................................................4

1.34. Disbursing Agent ...........................................................................................4

1.35. Disclosure Statement .....................................................................................4

1.36 Disclosure Statement Supplement…....................................................4

1.37. Disputed Claim ...............................................................................................4

1.38. Disputed Claims Reserve .............................................................................5

1.39. Effective Date .................................................................................................5

1.40. Equity Interest.................................................................................................5

1.41. Excess Cash ....................................................................................................5

1.42. Final Order ......................................................................................................5

1.43. First Subsequent Distribution Date ............................................................5

1.44. Funded Debt Claim ........................................................................................5

1.45. General Unsecured Claim .............................................................................6

1.46. General Unsecured Percentage ....................................................................6

1.47. Intercompany Claims .....................................................................................6

1.48. Interests ...........................................................................................................6

1.49. New Common Stock.......................................................................................6

1.50. New Management Warrants ..........................................................................6

1.51. New Management Warrant Agreement .......................................................6

1.52. New Warrant Agreement ..............................................................................6

1.53. New Warrants .................................................................................................6

1.54. Plan...................................................................................................................6

1.55. Plan Securities ...............................................................................................6

1.56. Plan Supplement ............................................................................................6

1.57. Priority Non-Tax Claim ................................................................................6

1.58. Priority Tax Claim..........................................................................................7

1.59. Private Company Term Sheet .......................................................................7

1.60. Ratable Proportion..........................................................................................7

1.61. Registration Rights Agreement ...................................................................7

**TABLE OF CONTENTS**
**(continued)**

Page

1.62.    Remaining Class 6 Distribution ...................................................................7

1.63.    Remaining Distribution ...............................................................................7

1.64.    Remaining Stock Distribution ....................................................................7

1.65.    Remaining Warrant Distribution .................................................................7

1.66.    Reorganization Cases ..................................................................................7

1.67.    Reorganized ABIZ ......................................................................................7

1.68.    Reorganized Debtors…………………………….…............................................8

1.69.    Reorganized Subsidiaries…………….…...........................................................8

1.70     Reorganized Subsidiaries By Laws…..............................................................8

1.71.    Reorganized Subsidiaries Certificates of Incorporation…................................8

1.72.    Rigas Family ...............................................................................................8

1.73.    Rigas Family Claim ....................................................................................8

1.74.    Schedules…...................................................................................................8

1.75.    Secured Claim .............................................................................................8

1.76.    Secured Noteholder Committee...................................................................8

1.77.    Secured Tax Claim .....................................................................................8

1.78.    Securities Claim ..........................................................................................8

1.79.    Special Board Committee ...........................................................................8

1.80.    Stock and/or Warrant Recovery .................................................................8

1.81.    Subsequent Distribution Date .....................................................................9

1.82.    Subordinated Claim ....................................................................................9

1.83.    Subsidiary Debtor.......................................................................................9

1.84.    Subsidiary Equity Interest ..........................................................................9

1.85.    Tort Claim ..................................................................................................9

1.86.    Trade Claim ................................................................................................9

1.87.    Wachovia Letter of Credit Claims .............................................................9

1.88.    12% Notes ..................................................................................................9

1.89.    12% Notes Claim ........................................................................................9

1.90.    12¼% Buffalo Claim ................................................................................ 10

1.91.    12¼% Deficiency Claim ........................................................................... 10

1.92.    12¼% Secured Notes ................................................................................ 10

1.93. 12¼% Secured Notes Claim ....................................................... 10

1.94. 12¼% Secured Notes Percentage ............................................... 10

1.95. 13% Notes ................................................................................. 10

1.96. 13% Notes Claim ...................................................................... 10

B.     Interpretation; Application of Definitions and Rules of Construction........................... 10

SECTION 2.     ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS ....... 10

2.1. Administrative Expense Claims.................................................. 10

2.2. Priority Tax Claims. ................................................................. 11

CLASSIFICATION OF CLAIMS AND INTERESTS ...................................................... 11

2.3. Classes of Claims and Interests................................................. 11

SECTION 3.     TREATMENT OF CLAIMS AND EQUITY INTERESTS ................................. 12

3.1. Secured Claims (Class 1). ......................................................... 12

3.2. Secured Tax Claims (Class 2)..................................................... 12

3.3. Priority Non-Tax Claims (Class 3).............................................. 12

3.4. Beal DIP Claims (Class 4).......................................................... 12

3.5. ACC DIP Claims (Class 5).......................................................... 12

3.6. 12¼% Secured Note Claims (Class 6).......................................... 13

3.7. General Unsecured Claims (Class 7)........................................... 13

    (a) Convenience Claims (Class 7A). ............................................ 13

    (b) Trade Claims (Class 7B)......................................................... 13

    (c) Funded Debt Claims (Class 7C)............................................... 14

    (d) 12% Notes Claims (Class 7D). ............................................... 14

3.8. Century Facility Claims (Class 8). .............................................. 15

3.9. Securities Claims (Class 9)......................................................... 15

3.10. Intercompany Claims (Class 10).................................................. 15

3.11. Equity Interests (Class 11). ........................................................ 16

3.12. Subsidiary Equity Interests (Class 12)......................................... 16

3.13. Subordinated Claims (Class 13)................................................... 16

3.14. Special Claims Treatment. ......................................................... 16

    (a) Tort Claims ........................................................................... 16

    (b) Covered Claims ..................................................................... 16

        (c)        Wachovia Letter of Credit Claims ................................................... 17

SECTION 4.        MEANS FOR IMPLEMENTATION ................................................... 17

4.1.    Deemed Substantive Consolidation of Debtors for Plan Purposes Only. .......... 17

4.2.    New Corporate Structure for Reorganized ABIZ. ........................................ 17

4.3.    Authorization of Plan Securities. ................................................................ 17

4.4.    Exit Facility. .............................................................................................. 17

4.5.    Cancellation of Existing Securities and Agreements and Related Indentures/Discharge of Indenture Trustee.................................................... 17

4.6.    Reorganized ABIZ Board of Directors.......................................................... 18

4.7.    Reorganized Subsidiaries Board of Directors………................................... 18

4.8.    Officers of Reorganized Debtors………....................................................... 18

4.9.    Corporate Action………............................................................................... 18

4.10.    By-Laws and Certificates of Incorporation .................................................. 19

SECTION 5.        DISTRIBUTIONS................................................................................ 19

5.1.    Record Date for Distributions...................................................................... 19

5.2.    Date of Distributions. ................................................................................. 19

5.3.    Subsequent Distributions ............................................................................ 19

5.4.    Surrender of Instruments............................................................................. 20

5.5.    Setoffs........................................................................................................ 20

5.6.    Delivery of Distributions............................................................................. 20

5.7.    Manner of Payment Under the Plan. ............................................................ 20

5.8.    No Fractional Distributions. ........................................................................ 21

5.9.    Distributions After Effective Date. .............................................................. 21

5.10.    Potential Actions Against ACC. .................................................................. 21

5.11.    Withholding and Reporting Requirements.................................................... 21

5.12.    Time Bar to Cash Payments. ....................................................................... 21

5.13.    Transactions on Business Days..................................................................... 22

5.14.    Minimum Distributions............................................................................... 22

5.15.    Allocation of Distributions. ......................................................................... 22

5.16.    Rights and Powers of Disbursing Agent. ...................................................... 22

SECTION 6.        PROCEDURES FOR TREATING DISPUTED CLAIMS................................. 22

6.1.    No Distribution Pending Allowance............................................................. 22

# TABLE OF CONTENTS
## (continued)

Page

| | | |
|---|---|---|
| 6.2. | Reserve Account for Disputed Claims | 23 |
| 6.3. | Resolution of Disputed Claims. | 23 |
| 6.4. | Estimation of Claims. | 23 |
| 6.5. | Allowance of Disputed Claims. | 23 |
| 6.6. | Release of Funds from Disputed Claims Reserve | 23 |
| 6.7. | Investment of Disputed Claims Reserve; Expenses. | 24 |
| 6.8. | Expedited Determination of Taxes | 24 |
| SECTION 7. | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 24 |
| 7.1. | General Treatment | 24 |
| 7.2. | Cure of Defaults. | 25 |
| 7.3. | Rejection Claims. | 25 |
| SECTION 8. | ACCEPTANCE OR REJECTION OF THE PLAN. | 25 |
| 8.1. | Voting of Claims. | 25 |
| 8.2. | Acceptance by a Class of Creditors. | 25 |
| 8.3. | Presumed Rejections of Plan and Cram Down. | 26 |
| SECTION 9. | CONDITION PRECEDENT TO THE EFFECTIVE DATE | 26 |
| 9.1. | Conditions to Confirmation. | 26 |
| 9.2. | Conditions to Occurrence of Effective Date | 26 |
| 9.3. | Waiver of Conditions. | 27 |
| 9.4. | Effect of Failure of Conditions. | 27 |
| SECTION 10. | EFFECT OF CONFIRMATION | 27 |
| 10.1. | Vesting of Assets. | 27 |
| 10.2. | Discharge of Claims and Termination of Equity Interests. | 27 |
| 10.3. | Discharge of Debtors. | 28 |
| 10.4. | Term of Injunctions or Stays. | 28 |
| 10.5. | Injunction Against Interference with Plan. | 28 |
| 10.6. | Exculpation. | 28 |
| 10.7. | Limited Releases | 28 |
| 10.8. | Avoidance Actions. | 29 |
| 10.9. | Injunction Regarding Worthless Stock Deduction. | 29 |
| SECTION 11. | RETENTION OF JURISDICTION | 29 |

| | | | |
|---|---|---|---|
| | 11.1. | Jurisdiction of the Bankruptcy Court. | 29 |
| SECTION 12. | | MISCELLANEOUS PROVISIONS | 31 |
| | 12.1. | Payment of Statutory Fees | 31 |
| | 12.2. | Compensation and Reimbursement Claims | 31 |
| | 12.3. | Dissolution of Creditors' Committee | 31 |
| | 12.4. | Creation of Special Board Committee | 31 |
| | 12.5. | Recognition of Guaranty Rights. | 31 |
| | 12.6. | No Deemed Waiver of Causes of Action. | 32 |
| | 12.7. | Certain Indenture Trustee Fees and Expenses. | 32 |
| | 12.8. | Expedited Determination of Taxes | 32 |
| | 12.9. | Exemption from Transfer Taxes | 32 |
| | 12.10. | Substantial Consummation. | 33 |
| | 12.11. | Amendments. | 33 |
| | | (a) Plan Modifications. | 33 |
| | | (b) Other Amendments | 33 |
| | 12.12. | Governing Law. | 33 |
| | 12.13. | Severability. | 33 |
| | 12.14. | Headings | 33 |
| | 12.15. | Exhibits. | 34 |
| | 12.16. | Time. | 34 |
| | 12.17. | Notices. | 34 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------------------x
                                                  :
In re                                             :              Chapter 11 Case No.
                                                  :
ADELPHIA BUSINESS SOLUTIONS, INC., et al.,        :              02-11389 (REG)
                                                  :
          Debtors.                                :              (Jointly Administered)
                                                  :
--------------------------------------------------------------------x
```

## DEBTORS' THIRD AMENDED JOINT PLAN OF
## REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

   Adelphia Business Solutions, Inc., a Delaware corporation, for itself and on behalf of certain of its direct and indirect subsidiaries,[1] the Creditors' Committee and the Secured Noteholder Committee (collectively, the "Plan Proponents") jointly propose the following joint chapter 11 Plan of Reorganization, pursuant to section 1121(a) of title 11 of the United States Code.

   The Debtors' Reorganization Cases have been consolidated for procedural purposes and are being jointly administered pursuant to an order of the Bankruptcy Court. This Plan contemplates the substantive consolidation of the Debtors' Reorganization Cases into a single chapter 11 case solely for the purposes of distribution and voting under this Plan, and in furtherance of certain settlements and compromises detailed in the Plan. For all other purposes, the Debtors will continue to maintain their separate corporate existence, except as otherwise expressly provided for in this Plan. In addition any obligation of any Debtor and all guarantees thereof executed by one or more of the Debtors will be deemed to be one obligation of the deemed consolidated Debtors; any Claims filed or to be filed in connection with any such obligation and such guarantees will be deemed one Claim against the deemed consolidated Debtors and each and every Claim filed in the individual Reorganization Case of any of the Debtors will be deemed filed against the deemed consolidated Debtors.

   Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtors' history, businesses, properties, certain postpetition events, results of operations, and projections for future operations, risk factors, and for a summary and analysis of the Plan and certain related matters, including the New Common Stock to be issued pursuant to the Plan. All holders of Claims against the Debtors entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.

---

[1] Adelphia Business Solutions Operations, Inc., Adelphia Business Solutions of Atlantic, Inc., Adelphia Business Solutions of Florida, Inc., Adelphia Business Solutions of Kentucky, Inc., Adelphia Business Solutions of Tennessee, Inc., and Adelphia Business Solutions of Vermont, Inc., Adelphia Business Solutions Long Haul, L.P., Adelphia Business Solutions International, LLC, Adelphia Business Solutions, LLC, Adelphia Business Solutions of Jacksonville, Inc., Adelphia Business Solutions of Louisiana, Inc., Adelphia Business Solutions of Nashville, L.P., Adelphia Business Solutions of South Carolina, Inc., Adelphia Business Solutions of Virginia, LLC, Adelphia Business Solutions Investment East, LLC, Adelphia Business Solutions Investment, LLC, and Adelphia Business Solutions of Louisiana, LLC.

## SECTION 1.   DEFINITIONS AND INTERPRETATION

### A.  *Definitions*.

The following terms used herein shall have the respective meanings ascribed below:

1.1.    ***ABIZ*** means Adelphia Business Solutions, Inc., a Delaware corporation.

1.2.    ***ABIZ Committees*** means the Creditors' Committee and the Secured Noteholder Committee.

1.3.    ***ACC*** means Adelphia Communications Corporation, the Debtors' former parent corporation, and certain of its subsidiaries and/or affiliates, as relevant.

1.4.    ***ACC DIP Claims*** means all Claims arising under the ACC DIP Credit Agreement.

1.5.    ***ACC DIP Credit Agreement*** means that certain Secured Debtor in Possession Credit and Security Agreement dated as of March 27, 2002, as amended, among certain of the Debtors, ACC, and Highland 2000, L.P.

1.6.    ***Administrative Expense Claim*** means any right to payment constituting a cost or expense of administration of any of the Reorganization Cases allowed under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtors' estates, (b) any actual and necessary costs and expenses of operating the Debtors' businesses, (c) any indebtedness or obligations incurred or assumed by the Debtors, as debtors in possession, during the Reorganization Cases, (d) any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under sections 330 or 503 of the Bankruptcy Code, and (e) any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code.

1.7.    ***Allowed*** means, with reference to any Claim, (a) any Claim against any Debtor which has been listed by such Debtor in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (b) any Claim as to which no objection to allowance has been timely interposed in accordance with section 502 of the Bankruptcy Code and Bankruptcy Rule 2007 or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (c) any Claim as to which, upon the lifting of the automatic stay pursuant to section 362 of the Bankruptcy Code, the liability of the Debtors, allowance and the amount thereof are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court, or (d) any Claim expressly allowed pursuant to this Plan.

1.8.    ***Amended By Laws*** means the By Laws of Reorganized ABIZ, substantially in the form set forth in the Plan Supplement.

1.9.    ***Amended Certificate of Incorporation*** means the Certificate of Incorporation of Reorganized ABIZ, as amended and restated, substantially in the form set forth in the Plan Supplement (and containing the applicable terms set forth in the Private Company Term Sheet).

1.10. **_Ballot_** means the form or forms distributed by the Debtors to each holder of an impaired Claim on which the holder of such Claim is to indicate acceptance or rejection of the Plan.

1.11. **_Bankruptcy Code_** means title 11 of the United States Code, as amended from time to time, applicable to the Reorganization Cases.

1.12. **_Bankruptcy Court_** means the United States District Court for the Southern District of New York having jurisdiction over the Reorganization Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Reorganization Cases under section 151 of title 28 of the United States Code.

1.13. **_Bankruptcy Rules_** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Reorganization Cases, and any Local Rules of the Bankruptcy Court.

1.14. **_Beal Bank_** means Beal Bank, SSB.

1.15. **_Beal DIP Claims_** means all Claims arising under the Beal DIP Credit Agreement.

1.16. **_Beal DIP Credit Agreement_** means that certain Secured Debtor in Possession Priming Term Loan, dated August 9, 2002, by and among the Debtors and Beal Bank, as amended, and all other agreements and documents entered into or executed in connection therewith.

1.17. **_Business Day_** means any day other than a Saturday, a Sunday, or a day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.18. **_Cash_** means legal tender of the United States of America.

1.19. **_Cash Recovery_** means a distribution of Cash to a holder of a Claim in Class 6, 7A, 7B, 7C, and/or 7D in lieu of New Common Stock and New Warrants (to the extent applicable) otherwise distributable to any such holder pursuant to Sections 3.6 and 3.7, in an amount equal to $8.94 per share of such New Common Stock that such holder would otherwise have received (with any related New Warrants to be extinguished).

1.20. **_Century Facility_** means the credit agreement, dated as of April 4, 2000 (as amended, modified, supplemented, or restated from time to time), among Century Cable Holdings, LLC, Ft. Myers Cablevision, LLC, and Highland Prestige Georgia, Inc., as borrowers, and one of the Debtors, as a purported unrestricted borrower pursuant to a designation request under such agreement, and Bank of America, N.A. and the Chase Manhattan Bank, as co-administrative agents, and the other lenders and agents party thereto.

1.21. **_Century Facility Claim_** means all Claims arising under the Century Facility.

1.22. **_Claim_** has the meaning set forth in section 101 of the Bankruptcy Code.

1.23. **_Class_** means any group of Claims or Interests classified by the Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

1.24.    *Collateral* means any property or interest in property of the estate of any Debtor subject to a lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

1.25.    *Confirmation Date* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

1.26.    *Confirmation Hearing* means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.27.    *Confirmation Order* means the order of the Bankruptcy Court confirming the Plan, pursuant to, *inter alia*, section 1129 of the Bankruptcy Code.

1.28.    *Convenience Claim* means a General Unsecured Claim (other than a Funded Debt Claim, a 12% Notes Claim, or a Century Facility Claim) in an amount less than or equal to $100,000 that will receive the treatment provided under the Plan in Class 7A.

1.29.    *Covered Claim* means any Claim arising from an incident or occurrence that is covered under the Debtors' insurance policies, other than a workers' compensation insurance policy, but excluding any deductible or self insured retention amounts not covered by any such policies.

1.30.    *Creditors' Committee* means the official committee of general unsecured creditors appointed in the Debtors' chapter 11 cases, as re-constituted from time to time.

1.31.    *Debtors* means ABIZ, and each of the entities listed in footnote 1 of this Plan.

1.32.    *Deficiency Claim* means the portion, if any, of a Secured Claim that is unsecured.

1.33.    *Disbursing Agent* means any entity in its capacity as a disbursing agent under section 5.16 hereof, whose appointment shall be in consultation with each of the ABIZ Committees, to the extent they exist at the time the appointment is made.

1.34.    *Disclosure Statement* means that certain disclosure document relating to the Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.35.    *Disclosure Statement Supplement* means any supplement to the Disclosure Statement approved by the Bankruptcy Court.

1.36.    *Disputed Claim* means, with reference to a Claim, any Claim (a) which has been or hereafter is listed on the Schedules as unliquidated, disputed, or contingent, and which has not been resolved by written agreement of the parties or by an order of the Bankruptcy Court, (b) which is disputed under the Plan, (c) as to which a Debtor or its designee has interposed a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, (d) any Claim, proof of which was filed in an amount greater than the amount reflected for such Claim as listed on the Schedules, and (e) any Claim proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly filed.

1.37.    ***Disputed Claims Reserve*** means, in the event there exists any Disputed Claims on the Effective Date, the reserve established in accordance with Section 6 of the Plan, to hold the Cash, New Common Stock and New Warrants that will be distributable to the holders of such Claims if such Claims are subsequently Allowed or distributed pursuant to section 5.3, as set forth more fully in Section 6 of this Plan.

1.38.    ***Effective Date*** means a Business Day selected by the Debtors on which (i) no stay of the Confirmation Order is in effect and (ii) the conditions to the effectiveness of the Plan specified in section 9.2 hereof has been satisfied or waived.  The Effective Date shall be no earlier than (i) 11 days after the later of the Confirmation Date, the date any stay of the Confirmation Order is dissolved, or (ii) the date on which the conditions to the effectiveness of the Plan specified in section 9.2 hereof have been satisfied or waived.

1.39.    ***Equity Interest*** means the interest of any holder of an equity security of ABIZ represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership interest in ABIZ, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest.

1.40.    ***Excess Cash*** means Cash available to the Debtors (including proceeds from any asset divestitures, but excluding proceeds from litigation settlements and any exit financing) in excess of the $4 million to be used to fund Cash Recovery elections by holders of Claims in Classes 6, 7A, 7B, 7C, and 7D to the extent ABIZ determines in its sole discretion on or before the Effective Date, to make such Excess Cash available for purposes of offering Cash Recovery elections to such holders, and only if such Cash is not otherwise needed as working capital for the ongoing operations of Reorganized ABIZ.  Notwithstanding the foregoing, with respect to any Cash generated from non-operating sources (including proceeds from any asset divestitures, but excluding proceeds from any exit financing) prior to the Effective Date, the determination of Excess Cash will be determined by the Debtors in consultation with the ABIZ Committees.

1.41.    ***Final Order*** means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Reorganization Cases, which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause such order not to be a Final Order.

1.42.    ***First Subsequent Distribution Date*** means the date which shall occur on or about 180 days after the Effective Date.

1.43.    ***Funded Debt Claim*** means an Allowed unsecured Claim arising under the 12¼% Secured Notes (solely with respect to the 12¼% Buffalo Claim and the 12¼% Deficiency Claim), or the 13% Notes, in each case excluding any Securities Claims.

1.44. ***General Unsecured Claim*** means any Claim against any of the Debtors that is not a Secured Claim, Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, Securities Claim, or Subordinated Claim.

1.45. ***General Unsecured Percentage*** means 40 percent of the New Common Stock, prior to the implementation of any Cash Recovery elections.

1.46. ***Intercompany Claims*** means a Claim of any one Debtor against another Debtor.

1.47. ***Interests*** means any Equity Interest or Subsidiary Equity Interest.

1.48. ***New Common Stock*** means the 10,000,000 shares of common stock, $0.01 par value, of Reorganized ABIZ authorized and issued hereunder or authorized for the purposes specified herein or in the Plan Securities.

1.49. ***New Management Warrants*** means the warrants to purchase up to 1,100,000 shares of New Common Stock as further described in the New Management Warrant Agreement.

1.50. ***New Management Warrant Agreement*** means the warrant agreement substantially in the form included in the Plan Supplement governing the exercise of the New Management Warrants.

1.51. ***New Warrant Agreement*** means the warrant agreement substantially in the form included in the Plan Supplement (and containing the applicable terms set forth in the Private Company Term Sheet), governing the exercise of the New Warrants.

1.52. ***New Warrants*** means the detachable warrants to purchase up to 1,500,000 shares of New Common Stock (representing up to 15.0% of the New Common Stock, excluding any option shares reserved for management and shares issued upon exercise of such warrants) in accordance with the provisions of the New Warrant Agreement, as more fully described in the Disclosure Statement Supplement.

1.53. ***Plan*** means this Joint Plan of Reorganization, including the exhibits and schedules annexed hereto and the documents included in the Plan Supplement, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.54. ***Plan Securities*** means, collectively, the New Common Stock and the New Warrants.

1.55. ***Plan Supplement*** means the supplement to the Plan containing certain documents relevant to the implementation of such Plan or the treatment of Allowed Claims thereunder, including, without limitation, the New Warrant Agreement, the New Management Warrant Agreement, a form of New Warrant, the Amended Certificate of Incorporation, the Amended By-Laws, and the Registration Rights Agreement. The Plan Supplement will be filed with the Bankruptcy Court no later than 10 days prior to the Confirmation Hearing.

1.56. ***Priority Non-Tax Claim*** means any Claim against any of the Debtors that is not an Administrative Expense Claim or a Priority Tax Claim, and that is entitled to priority in payment as specified in sections 507(a)(2), (3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

1.57.    ***Priority Tax Claim*** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.58.    ***Private Company Term Sheet*** means that certain term sheet, which is attached to the Disclosure Statement as Exhibit D, setting forth certain rights of holders of New Common Stock and New Warrants.

1.59.    ***Ratable Proportion*** means the ratio (expressed as a percentage) of the amount of an Allowed Claim (or Disputed Claim) in a Class to the aggregate amount of all Allowed Claims and Disputed Claims in the same Class.

1.60.    ***Registration Rights Agreement*** means a registration rights agreement containing the provisions set forth in the Private Company Term Sheet (attached to the Disclosure Statement as Exhibit D) to be agreed upon in form and substance by the Plan Proponents, and also containing provisions that will restrict transfers to preclude inadvertent requirement to register under '34 Act.

1.61.    ***Remaining Class 6 Distribution*** means a distribution of the number of shares of New Common Stock to be distributed to the holder of a Claim in Class 6 that elects a Cash Recovery, which shall be made on the First Subsequent Distribution Date, in the event that there is insufficient Cash on the First Subsequent Distribution Date to satisfy in full such holder's Cash Recovery election, which distribution shall be made in accordance with the following formula: the proportionate share of New Common Stock otherwise distributable to the holder of a Claim in Class 6 (if the holder had instead elected a proportionate share of the 12¼% Secured Notes Percentage), less (aggregate Cash Recovery received by such holder divided by $8.94).

1.62.    ***Remaining Distribution*** means a distribution of a Remaining Stock Distribution and a Remaining Warrant Distribution to a holder of a Claim, which shall be made on the First Subsequent Distribution Date, to the extent necessary to satisfy in full the Claims of each holder that elects a Cash Recovery, in the event that there is insufficient Cash on the First Subsequent Distribution Date to satisfy in full such holder's Cash Recovery election.

1.63.    ***Remaining Stock Distribution*** means the number of shares of New Common Stock to be distributed to the holder of a Claim that elects a Cash Recovery, in the event that there is insufficient Cash to satisfy in full such holder's Cash Recovery election, which distribution shall be made on the First Subsequent Distribution Date in accordance with the following formula: the Ratable Proportion of New Common Stock otherwise distributable to the holder of a Claim (if the holder had instead elected a Stock and/or Warrant Recovery), less (aggregate Cash Recovery received by such holder divided by $8.94).

1.64.    ***Remaining Warrant Distribution*** means a distribution on the First Subsequent Distribution Date of New Warrants that is exercisable into a number of shares of New Common Stock equal to the Remaining Stock Distribution multiplied by 37.5%.

1.65.    ***Reorganization Cases*** means the jointly administered cases commenced under chapter 11 of the Bankruptcy Code commenced by the Debtors on March 27, 2002, and June 18, 2002 in the United States District Court for the Southern District of New York and styled In re Adelphia Business Solutions, Inc. et al., 02-11389 (REG).

1.66.    ***Reorganized ABIZ*** means ABIZ, as reorganized as of the Effective Date in accordance with the Plan.

1.67.    ***Reorganized Debtors*** means the Debtors, and any successor thereto by merger, consolidation, or otherwise, on and after the Effective Date.

1.68.    ***Reorganized Subsidiaries*** means each of the entities listed in footnote 1 of this Plan, and any successor thereto by merger, consolidation, or otherwise, on and after the Effective Date.

1.69.    ***Reorganized Subsidiaries By Laws*** means the amended and restated by-laws of the Reorganized Subsidiaries.

1.70.    ***Reorganized Subsidiaries Certificates of Incorporation*** means the amended and restated Certificates of Incorporation of the Reorganized Subsidiaries.

1.71.    ***Rigas Family*** means any member of the Rigas Family, including spouses, aunts, uncles, siblings and their spouses, cousins, and any children or parents of the foregoing, of John J. Rigas, Timothy J. Rigas, Michael J. Rigas, or James P. Rigas, or any affiliate of the Rigas Family other than (i) ABIZ and its subsidiaries and (ii) ACC and each of its subsidiaries that have commenced a case under chapter 11 of the Bankruptcy Code.

1.72.    ***Rigas Family Claim*** means any Claim against any of the Debtors that is held by a member of the Rigas Family.

1.73.    ***Schedules*** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

1.74.    ***Secured Claim*** means a Claim (i) that is secured by Collateral, and that is of an amount that is greater than, equal to, or less than the value of such Collateral, as determined by (A) the Plan, (B) an agreement between the holder of such Claim and the Debtors, or (C) a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) in the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code, but excluding for purposes of this Plan, a 12¼% Secured Note Claim (which is treated separately under this Plan).

1.75.    ***Secured Noteholder Committee*** means the ad hoc committee of holders of 12¼% Secured Notes.

1.76.    ***Secured Tax Claim*** means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code.

1.77.    ***Securities Claim*** means a Claim for damages or rescission arising from the purchase or sale of a security of a Debtor, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim, that is subordinated to other Claims or interests in accordance with section 510(b) of the Bankruptcy Code.

1.78.    ***Special Board Committee*** means the committee established pursuant to Section 12.4 of the Plan.

1.79.    ***Stock and/or Warrant Recovery*** means (A) as to a holder of a Funded Debt Claim, Trade Claim, Convenience Claim, or Century Facility Claim (to the extent any portion thereof is Allowed) a Ratable Proportion of (i) the General Unsecured Percentage and (ii) the New Warrants, in each case taking into consideration the contractual subordination of the 12% Notes to the 12¼%

Secured Notes and the 13% Notes, and (B) as to a non-Rigas Family holder of 12% Notes, a Ratable Proportion of .25% of the aggregate number of shares of New Common Stock outstanding on the Effective Date, contributed by the holders of the 12¼% Secured Notes and the 13% Notes based upon a proportionate share of such holders' respective Stock and/or Warrant Recovery (excluding for purposes of this calculation, the 12¼% Buffalo Claim). The holders of 12¼% Secured Notes Claims and 13% Notes Claims have agreed that the distributions that the holders of the 12% Notes Claims would otherwise receive will be made to the holders of the 12¼% Secured Notes Claims and 13% Notes Claims ratably based upon the outstanding amount of the 12¼% Deficiency Claim and the principal amount of the 13% Notes.

      1.80.    ***Subsequent Distribution Date*** means, following the First Subsequent Distribution Date, a date which shall occur at the end of each subsequent three-month period, or more frequently as may be determined by the Disbursing Agent, on which a Ratable Proportion of the Cash, New Common Stock or New Warrants is distributed to the holders of Allowed Claims and to the Disputed Claims Reserve, in accordance with section 5 of the Plan.

      1.81.    ***Subordinated Claim*** means any Claim that is determined to be subordinated to other Claims pursuant to section 510(c) of the Bankruptcy Code, including, but not limited to, any Rigas Family Claim.

      1.82.    ***Subsidiary Debtor*** means one of the Debtors, excluding ABIZ.

      1.83.    ***Subsidiary Equity Interest*** means the interest of any holder of an equity security of any Debtor other than ABIZ represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership interest in such Debtor, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest.

      1.84.    ***Tort Claim*** means any Claim that has not been compromised and settled or otherwise resolved (a) relating to personal injury, wrongful death, property damage, products liability, or other similar Claim asserted against any of the Debtors, or (b) arising under any federal, state or local statute, rule regulation or ordinance governing, regulating or relating to health, safety, hazardous substances or the environment, including, in each case, unasserted and other intangible Claims.

      1.85.    ***Trade Claim*** means a General Unsecured Claim (other than a Funded Debt Claim, 12% Notes Claim, or Century Facility Claim) in an amount more than $100,000 that will receive the treatment provided under the Plan in Class 7B.

      1.86.    ***Wachovia Letter of Credit Claims*** means those claims by Wachovia Bank, National Association against Adelphia Business Solutions of Pennsylvania, Inc., Adelphia Business Solutions Investments, LLC, Adelphia Business Solutions Operations, Inc. f/k/a Adelphia Business Solutions of Illinois, Inc., and Adelphia Business Solutions of Virginia, LLC pursuant to those separate certain Applications And Agreements For Irrevocable Standby Letter Of Credit against Adelphia Business Solutions Operations, Inc. and Adelphia Business Solutions, Inc. pursuant to those certain Guaranty Agreements and related Pledge Agreements approved by the Final Order Pursuant To Sections 105, 363(b) and 364 of the Bankruptcy Code and Bankruptcy Rule 4001, Authorizing The Debtors To Replace An Expired Performance Bond With A Secured Letter Of Credit.

      1.87.    ***12% Notes*** means the 12% Senior Subordinated Notes Due 2007 issued by ABIZ.

      1.88.    ***12% Notes Claim*** means an Allowed Claim in the aggregate amount of $314,600,000 arising from the 12% Notes.

1.89.    ***12¼% Buffalo Claim*** means an Allowed Claim in the aggregate amount of $75,300,000 against ABIZ, in full satisfaction of Claims arising from various transactions involving Adelphia Business Solutions Atlantic, Inc., a Subsidiary Debtor.

1.90.    ***12¼% Deficiency Claim*** means a Deficiency Claim in the aggregate amount of $160,244,306.

1.91.    ***12¼% Secured Notes*** means the Series A & B 12¼% Senior Secured Notes Due 2004 issued by ABIZ.

1.92.    ***12¼% Secured Notes Claim*** means an Allowed Claim in the aggregate amount of $107,280,000 representing the secured portion of such Claim arising from the 12¼% Secured Notes.

1.93.    ***12¼% Secured Notes Percentage*** means 60 percent of the New Common Stock, prior to the implementation of any Cash Recovery elections.

1.94.    ***13% Notes*** means the Series A & B 13% Senior Discount Notes Due 2003 issued by ABIZ.

1.95.    ***13% Notes Claim*** means an Allowed Claim in the aggregate amount of $321,504,920 arising from the 13% Notes.

**B.    Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section, schedule, or exhibit references in the Plan are to the respective section in, article of, or schedule or exhibit to the Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

**SECTION 2.    ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS**

**2.1.    *Administrative Expense Claims.***

On the Effective Date, except to the extent that a holder of an Allowed Administrative Expense Claim against any of the Debtors agrees to a different treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Claim; *provided, however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as debtors in possession, shall be paid by the Debtors or by Reorganized ABIZ in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions. On the Effective Date or at a later date pursuant to the Beal DIP Credit Agreement, each Beal DIP Claim arising under or evidenced by the Beal DIP Credit Agreement that is not otherwise paid in full under section 3.4 below shall be an allowed Administrative Expense Claim of a higher priority than any other Administrative Expense Claim, and shall be paid in Cash in an amount equal to the amount of such Beal DIP Claim.

## 2.2. *Priority Tax Claims.*

On the Effective Date, except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtors, (a) Cash in an amount equal to such Allowed Priority Tax Claim or (b) equal annual Cash payments through the sixth anniversary of the date of assessment of such Allowed Priority Tax Claim, in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at a fixed annual rate equal to 5%, with payments commencing at the first anniversary of the Effective Date, or (c) upon such other terms determined by the Bankruptcy Court to provide the holder of such Allowed Priority Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

## CLASSIFICATION OF CLAIMS AND INTERESTS

The following tables (i) designate the classes of Claims against, and Interests in, the Debtors, taking into account the substantive consolidation of the Debtors that is contemplated by section 4.1 of the Plan, and (ii) specify which of those classes are (a) impaired or unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, or (c) deemed to reject the Plan.

## 2.3. *Classes of Claims and Interests.*

| *Class* | *Designation* | *Impairment* | *Entitled to Vote* |
|---------|---------------|--------------|--------------------|
| Class 1 | Secured Claims | unimpaired | No |
| Class 2 | Secured Tax Claims | unimpaired | No |
| Class 3 | Priority Non-Tax Claims | unimpaired | No |
| Class 4 | Beal DIP Claims | unimpaired | No |
| Class 5 | ACC DIP Claims | impaired | No (deemed to reject) |
| Class 6 | 12¼% Secured Notes Claims | impaired | Yes |
| Class 7 | General Unsecured Claims | | |
| Class 7A | Convenience Claims | impaired | Yes |
| Class 7B | Trade Claims | impaired | Yes |
| Class 7C | Funded Debt Claims | impaired | Yes |
| Class 7D | 12% Notes Claims | impaired | Yes |
| Class 8 | Century Facility Claims | impaired | No |
| Class 9 | Securities Claims | impaired | No (deemed to reject) |
| Class 10 | Intercompany Claims | impaired | No (deemed to reject) |
| Class 11 | Equity Interests | impaired | No (deemed to reject) |
| Class 12 | Subsidiary Equity Interests | unimpaired | No |
| Class 13 | Subordinated Claims | impaired | No (deemed to reject) |

# SECTION 3.  TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 3.1.  *Secured Claims (Class 1).*

On the Effective Date, except to the extent that a holder of an Allowed Secured Claim against any of the Debtors has agreed to a different treatment of such Claim, each holder of an Allowed Secured Claim shall receive, at the option of the Debtors, either (i) the Collateral securing such Allowed Secured Claim, (ii) Cash or a Note in an amount equal to the value of the Collateral, as of the Effective Date, securing such Allowed Secured Claim, (iii) the net proceeds realized from the sale of any Collateral securing such Claim, or (iv) the treatment required under section 1124(2) of the Bankruptcy Code for such Claim to be reinstated or rendered unimpaired.  To the extent the amount of an Allowed Secured Claim exceeds the value of the Collateral securing such Allowed Secured Claim, the excess portion of such Claim shall be treated as an unsecured Deficiency Claim in Classes 7A or 7B, as applicable.

### 3.2.  *Secured Tax Claims (Class 2).*

On the Effective Date, except to the extent that a holder of an Allowed Secured Tax Claim against any of the Debtors has agreed to a different treatment of such Claim, each holder of an Allowed Secured Tax Claim shall receive, at the option of the Debtors, either (i) the Collateral securing such Allowed Secured Tax Claim, (ii) Cash in an amount equal to the value of such Allowed Secured Tax Claim, or (iii) equal annual Cash payments in an aggregate amount equal to such Allowed Secured Tax Claim, including interest at a fixed annual rate equal to 5%, over a period through the sixth anniversary of the date of assessment of such Allowed Secured Tax Claim, with payments commencing on the first anniversary of the Effective Date, or (c) upon such other terms determined by the Bankruptcy Court to provide holder of such Allowed Secured Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Secured Tax Claim.

### 3.3.  *Priority Non-Tax Claims (Class 3).*

On the Effective Date, except to the extent that a holder of an Allowed Priority Non-Tax Claim against any of the Debtors has agreed to a different treatment of such Claim, each such holder shall receive, in full satisfaction of such Claim, Cash in an amount equal to such Claim.

### 3.4.  *Beal DIP Claims (Class 4).*

On the Effective Date, except to the extent that the Beal DIP Credit Agreement otherwise provides, all obligations of the Debtors under the Beal DIP Credit Agreement shall be paid in cash in full in accordance with the terms of the Beal DIP Credit Agreement.  Upon payment or satisfaction in full of all obligations under the Beal DIP Credit Agreement in accordance with the terms thereof, all liens and security interests granted to secure such obligations shall be deemed terminated, released, and of no further force and effect.  In addition, to the extent, if any, that the Beal DIP Claim is not satisfied in cash in full under this section 3.4, such claim shall have the rights afforded in section 2.1 hereof.

### 3.5.  *ACC DIP Claims (Class 5).*

On the Effective Date, for the reasons set forth in the Disclosure Statement, ACC shall receive no distribution of property in respect of any Claims it has asserted under the ACC DIP Credit Agreement.

3.6.    *12¼% Secured Note Claims (Class 6)*.

On the Effective Date, each holder of an Allowed 12¼% Secured Notes Claim shall receive (a) its proportionate share of the 12¼% Secured Notes Percentage, (b) its Ratable Proportion of the 12¼% Deficiency Claim, and (c) its Ratable Proportion of the 12¼% Buffalo Claim in full satisfaction of such holder's Claims arising under the 12¼% Secured Notes. Each holder of a 12¼% Secured Notes Claim shall elect on its Ballot to receive in respect of its proportionate share of the 12¼% Secured Notes Percentage either (a) New Common Stock or (b) a Cash Recovery, in full satisfaction of such Allowed Claim. The aggregate amount of Cash available under the Plan to satisfy any Cash Recovery elections by the holders of Claims in Class 6 shall be $4 million, less the amount of Cash used to satisfy Cash Recovery elections by the holders of Claims in Class 7A, 7B, and 7D, plus Excess Cash, if any (the "Funded Debt Cash"). The holders of Allowed Claims in Class 6 that elect the Cash Recovery shall be entitled to receive the Funded Debt Cash only on a ratable basis with the holders of Allowed Claims in Class 7C who elect a Cash Recovery. The shares of New Common Stock otherwise distributable to holders of Class 6 Claims that elect and receive a Cash Recovery will be transferred to the treasury of Reorganized ABIZ. In the event that the Funded Debt Cash is insufficient to satisfy in full the Claims of all holders in Classes 6 and 7C that elect a Cash Recovery (with such insufficiency being determined as of the First Subsequent Distribution Date), each such holder shall receive its proportionate share of the Funded Debt Cash, and the remainder of its Claims shall be satisfied with a Remaining Class 6 Distribution. To the extent that any Cash remains after the satisfaction of any Cash Recovery elections in Classes 6 and 7C (including Cash Recovery elections by holders of Disputed Claims in Class 7C), such Cash shall revert to the possession of Reorganized ABIZ. The holders of Allowed Claims in Class 6 shall have the secured portion of their Claims allowed in the amount of $107,280,000, and their respective 12¼% Deficiency Claims and 12¼% Buffalo Claims shall be Allowed and treated in accordance with section 3.7(c) of the Plan.

3.7.    *General Unsecured Claims (Class 7)*

(a)  *Convenience Claims (Class 7A)*.  On the Effective Date, each holder of an Allowed Convenience Claim shall receive (as elected on its Ballot) either (a) a Stock and/or Warrant Recovery, or (b) a Cash Recovery, in full satisfaction of such Allowed Claim. The aggregate amount of Cash available under the Plan to satisfy any Cash Recovery elections by the holders of Claims in Class 7A shall be $4 million, plus Excess Cash, if any (the "Class 7A Cash"). The shares of New Common Stock otherwise distributable to holders of Claims in this Class 7A that elect and receive a Cash Recovery will be transferred to the treasury of Reorganized ABIZ, and the New Warrants otherwise distributable to holders of Claims in this Class 7A that elect and receive a Cash Recovery will be extinguished. Any Class 7A Cash not necessary to satisfy Cash Recovery elections in Class 7A (including such elections by holders of Disputed Claims in Class 7A) shall be used for funding Cash Recovery elections by holders of Claims in Class 7B, as described below.

(b)  *Trade Claims (Class 7B)*.  On the Effective Date, each holder of an Allowed Trade Claim shall receive (as elected on its Ballot) either (a) a Stock and/or Warrant Recovery, or (b) a Cash Recovery, in full satisfaction of such Allowed Claim. The aggregate amount of Cash available under the Plan to satisfy any Cash Recovery elections by the holders of Claims in Class 7B shall be $4 million, less the amount of Cash used to satisfy Cash Recovery elections by the holders of Claims in Class 7A, plus Excess Cash, if any (the "Class 7B Cash"). The shares of New Common Stock otherwise distributable to holders of Claims in this Class 7B that elect and receive a Cash Recovery will be transferred to the treasury of Reorganized ABIZ, and the New Warrants otherwise distributable to holders of Claims in this Class 7B that elect and receive a Cash Recovery will be extinguished. In the event the Class 7B Cash is insufficient to satisfy in full the Claims of all holders in Class 7B that elect a Cash Recovery (with such insufficiency being determined as of the First Subsequent Distribution Date), each

such holder shall receive its proportionate share of the Class 7B Cash, and the remainder of its Claims shall be satisfied with a Remaining Distribution. Any Class 7B Cash not necessary to satisfy Cash Recovery elections in Class 7B (including such elections by holders of Disputed Claims in Class 7B), shall be used for funding Cash Recovery elections by holders of Claims in Class 7D, as described below.

(c) ***Funded Debt Claims (Class 7C)***. On the Effective Date, each holder of a Funded Debt Claim shall receive (as elected on its Ballot) either (a) a Stock and/or Warrant Recovery, or (b) a Cash Recovery, in full satisfaction of such Allowed Claim. The aggregate amount of Cash available under the Plan to satisfy any Cash Recovery elections by the holders of Claims in Class 7C shall be the Funded Debt Cash, as defined in section 3.6 of this Plan. The holders of Allowed Claims in Class 7C that elect the Cash Recovery shall be entitled to receive the Funded Debt Cash only on a ratable basis with the holder of Allowed Claims in Class 6. The shares of New Common Stock otherwise distributable to holders of Claims in this Class 7C that elect and receive a Cash Recovery will be transferred to the treasury of Reorganized ABIZ, and the New Warrants otherwise distributable to holders of Claims in this Class 7C that elect and receive a Cash Recovery will be extinguished. In the event that the Funded Debt Cash is insufficient to satisfy in full the Claims of all holders in Classes 6 and 7C that elect a Cash Recovery (with such insufficiency being determined as of the First Subsequent Distribution Date), each such holder shall receive its proportionate share of the Funded Debt Cash, and the remainder of its Claims shall be satisfied with a Remaining Distribution. To the extent that any Funded Debt Cash remains after the satisfaction of any Cash Recovery elections in Classes 6 and 7C (including Cash Recovery elections by holders of Disputed Claims in Classes 7C), such Cash shall revert to the possession of Reorganized ABIZ.

(d) ***12% Notes Claims (Class 7D)***.

i.     As described more fully in *Section V.D* of the Disclosure Statement, the 12% Notes Claims are contractually subordinated to the holders of 12¼% Secured Notes Claims (Class 6 for the 12¼ Secured Notes Claim, Class 7C for the 12¼% Deficiency Claim and the 12¼% Buffalo Claim) and to the 13% Note Claims (Class 7C Claims). As a result, holders of 12% Notes Claims would not be entitled to receive any distributions under the Plan on account of such Claims. However, the holders of 12¼% Secured Notes and 13% Notes Claims have agreed to contribute, on a ratable basis, based upon the outstanding amount of the 12¼% Deficiency Claim and the principal amount of the 13% Notes, a Stock and/or Warrant Recovery to holders of 12% Notes Claims (other than holders of Rigas Family Claims) in the amount set forth in Section 1.74(B).

ii.     On the Effective Date, each holder of a 12% Notes Claim (other than a Rigas Family member) shall receive (as elected on its Ballot) either (a) a Stock and/or Warrant Recovery representing such holder's proportionate share of 0.25% of the New Common Stock issued and outstanding on the Effective Date, or (b) a Cash Recovery, in full satisfaction of such Allowed Claim. The aggregate amount of Cash available under the Plan to satisfy any Cash Recovery elections by the holders of Claims in Class 7D shall be $4 million, less the amount of Cash used to satisfy Cash Recovery elections by the holders of Claims in Class 7A and 7B, plus Excess Cash, if any (the "Class 7D Cash"). The shares of New Common Stock otherwise distributable to holders of Claims in this Class 7D that elect and receive a Cash Recovery will be transferred to the treasury of Reorganized ABIZ. In the event that the Class 7D Cash is insufficient to satisfy in full the Claims of all holders in Classes 6 and 7C that elect a Cash Recovery (with such insufficiency being determined as of the Effective Date), each such holder shall receive its proportionate share of the Class 7D Cash, and the remainder of its Claims shall be satisfied with a Remaining Stock Distribution, *provided, however*, that the New Warrants related to such Stock shall be extinguished. To the extent that any Class 7D Cash remains after the satisfaction of any Cash Recovery elections in Class 7D (including Cash Recovery elections by holders of Disputed Claims in Class 7D), such Cash shall revert to the possession of Reorganized ABIZ.

### 3.8.    *Century Facility Claims (Class 8)*.

On the Effective Date, Bank of America, as Administrative Agent (the "Century Administrative Agent") under the Century Facility, the "Century Lenders") under the Century Facility, $1,000,000 in cash (the "Class 8 Distribution").  The Class 8 Distribution shall be the entire distribution under the Plan with respect to the Claims, if any, which the Century Administrative Agent and/or the Century Lenders may have against any of the Debtors under the Century Facility or otherwise, without any admissions regarding, or determination of, the validity and enforceability of the Century Facility Claims against any of the Debtors or any defenses of any of the Debtors to payment of the Century Facility Claims.  With respect to parties other than the Debtors and non-Debtor subsidiaries of the Debtors, the Century Administrative Agent, the other agents under the Century Facility, and the Century Lenders expressly reserve their rights, including a continued right of recourse, against the other borrowers under the Century Facility (Century Cable Holdings, LLC, Ft. Myers Cablevision, LLC, and Highland Prestige Georgia, Inc.), all guarantors under the Century Facility, including without limitation those set forth on Schedule A hereto, all pledgors under the Century Facility, including, without limitation, certain guarantors and the pledgors set forth on Schedule A hereto, together with their respective successors and assigns (collectively, the "Century Co-Obligors"), including all rights in respect of and for payment upon all Obligations (as defined in the documentation in respect of the Century Claim) against such parties, and all collateral securing the Century Facility (the "Century Collateral"), none of which shall be released by reason of the Plan or otherwise by operation of applicable non-bankruptcy law (the "Century Reservation of Rights").  With respect to parties other than the Century Lenders and Century Administrative Agent, the Debtors will be deemed to have expressly reserved all of their respective rights, claims, causes of action and remedies arising out of or related to the Century Facility, including without limitation any claims for reimbursement related to the Class 8 Distribution.  Solely with respect to the Century Lenders and Century Administrative Agent, upon the Century Administrative Agent's receipt of the Class 8 Distribution, the Debtors shall be deemed to release and disclaim any rights, claims, causes of action and remedies against the Century Lenders and Century Administrative Agent that arise out of or relate to the Century Facility and the Class 8 Distribution.  The Century Facility Claims will be paid only to the extent of the Class 8 Distribution as and when the Class 8 Distribution is actually received by the Century Administrative Agent.   All obligations of all parties, including the Century Facility Co-Obligors, under and in respect of the Century Facility, notwithstanding and except to the extent of the amount of the Class 8 Distribution actually received under the Plan, shall remain outstanding and they, in addition to the rights of the Century Administrative Agent and the Century Lenders in the Century Collateral, are not extinguished, or otherwise reduced or impaired by reason of the effect of the Plan, but shall be discharged with respect to the Debtors and non-Debtor Subsidiaries of the Debtors and are subject to the provisions of Section 1141 of the Bankruptcy Code and each of the Century Lenders and the Century Administrative Agent and their respective successors and assigns shall not be entitled to receive any further distribution or consideration from any of the Debtors with respect to the Century Facility Claims.

### 3.9.    *Securities Claims (Class 9)*.

On the Effective Date, each holder of a Securities Claim shall receive no distribution of property on account of such Claim.

### 3.10.    *Intercompany Claims (Class 10)*.

On or prior to the Effective Date, each holder of an Allowed Intercompany Claim shall be extinguished by either offset, distribution, or contribution of such Claims, or otherwise (as, and to the extent, determined by the Debtors).  Any Claims held by any Debtor against any Non-Debtor Subsidiary

or by any Non-Debtor Subsidiary against any Debtor shall be reviewed by Reorganized ABIZ and adjusted, continued, or discharged, as appropriate.

### 3.11. *Equity Interests (Class 11)*.

On the Effective Date, each holder of an Equity Interest shall receive no distribution of property on account of such Equity Interest. On the Effective Date, all Equity Interests in ABIZ will be extinguished.

### 3.12. *Subsidiary Equity Interests (Class 12)*.

On the Effective Date, each holder of a Subsidiary Equity Interest shall retain its rights in such Subsidiary Equity Interest.

### 3.13. *Subordinated Claims (Class 13)*.

On the Effective Date, each holder of a Subordinated Claim shall receive no distribution of property on account of such Claim.

### 3.14. *Special Claims Treatment*.

(a) *Tort Claims*

All Tort Claims are Disputed Claims. Any Tort Claim as to which a proof of claim was timely filed in the Chapter 11 Cases shall be determined and liquidated either (i) in the administrative or judicial tribunal in which it is pending on the Effective Date or, if no action was pending on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction, or (ii) in accordance with any alternative dispute resolution or similar proceeding as the same may be approved by order of a court of competent jurisdiction. Any Tort Claim determined and liquidated (i) pursuant to a judgment obtained in accordance with this Section and applicable non-bankruptcy law which is no longer appealable or subject to review, or (ii) in any alternative dispute resolution or similar proceeding as the same may be approved by order of a court of competent jurisdiction (except, in either case, as to a Tort Claim which is an Allowed Administrative Claim) shall be deemed, to the extent applicable, an Allowed General Unsecured Claim in such liquidated amount; *provided, however,* that the Allowed amount of any Tort Claim that is also a Covered Claim shall be limited as provided in Section 3.14(b) and treated as General Unsecured Claims as set forth in Section 3.7(a) or 3.7(b) of this Plan, as applicable. Nothing contained in this Section shall impair the rights of the Debtors or any other party in interest to seek estimation of any and all Tort Claims and other unliquidated Claims in a court or courts of competent jurisdiction. In addition, nothing contained in this Section shall constitute or be deemed a waiver of any claim, or right that the Debtors may have against any person in connection with or arising out of any Tort Claim.

(b) *Covered Claims*

To the extent that any holder of a General Unsecured Claim has recourse to any insurance policy issued to or for the benefit of the Debtors for the coverage of such Claim, the holder of such Claim must first, to the satisfaction of the Debtors, use its best efforts to collect its Allowed Claims from the insurance carrier. Any remaining unpaid portion of such Allowed General Unsecured Claim shall be treated as an Allowed General Unsecured Claim. Any liquidated and determined Covered Claim shall be the obligation of, and satisfied by, any applicable insurance agreement providing coverage for the Covered Claim.

(c) *Wachovia Letter of Credit Claims*

The Wachovia Letter Of Credit Claims shall be reinstated against the respective Debtors and shall continue to be governed thereby. The discharge and injunction provisions of this Plan shall not impact or otherwise affect the Wachovia Letter of Credit Claims.

SECTION 4.    **MEANS FOR IMPLEMENTATION**

4.1.    *Deemed Substantive Consolidation of Debtors for Plan Purposes Only*.

Subject to the occurrence of the Effective Date, the Debtors shall be deemed consolidated for purposes of voting and determining distributions under the Plan. Any obligation of any Debtor and all guarantees thereof executed by one or more of the Debtors will be deemed to be one obligation of the deemed consolidated Debtors; any Claims filed or to be filed in connection with any such obligation and such guarantees will be deemed one Claim against the deemed consolidated Debtors and each and every Claim filed in the individual Reorganization Cases of any of the Debtors will be deemed filed against the deemed consolidated Debtors.

Such deemed consolidation, however, shall not (other than for purposes related to funding distributions under the Plan and as set forth above in this section) affect: (i) the legal and organizational structure of the Debtors; (ii) pre- and post-chapter 11 guaranties, liens, and security interests that are required to be maintained (A) in connection with executory contracts or unexpired leases that were entered into during the Reorganization Cases or that have been or will be assumed, (B) pursuant to the Plan, or (C) in connection with any financing entered into by the Debtors on (or after) the Effective Date; and (iii) distributions to holders of claims paid from insurance policies or proceeds of such policies.

4.2.    *New Corporate Structure for Reorganized ABIZ*.

Except as otherwise set forth in the Plan, prior to or as of the Effective Date, and only with each of the ABIZ Committee's prior written consent, ABIZ may cause any or all of the Debtors to engage in any restructuring transactions deemed necessary or appropriate (including, without limitation, merging, dissolving, or transferring assets between or among the Debtors).

4.3.    *Authorization of Plan Securities*.

Reorganized ABIZ is authorized to issue (i) the New Common Stock, (ii) the New Warrants, and (iii) the New Management Warrants. Such securities shall have the various associated rights described in Section 4.2 of the Disclosure Statement.

4.4.    *Exit Facility*.

On the Effective Date, to the extent necessary, Reorganized ABIZ shall obtain exit financing from a source and in an amount and upon terms and conditions reasonably acceptable to the Creditors' Committee and the Secured Noteholder Committee.

4.5.    *Cancellation of Existing Securities and Agreements and Related Indentures/Discharge of Indenture Trustee*.

(a) On the Effective Date, the 12¼% Secured Notes, the 13% Notes and the 12% Notes shall be cancelled and the holders thereof shall have no further rights or entitlements in respect thereof except the rights to receive the distributions to be made to such holders under the Plan. To the

extent possible, distributions to be made under the Plan to the beneficial owners of the 12% Notes, the 12¼% Secured Notes, and the 13% Notes shall be made through the Depository Trust Company and its participants. The Confirmation Order shall authorize the Disbursing Agent to take whatever action may be necessary to deliver the distributions, including, without limitation obtaining an order of the Bankruptcy Court.

(b) On the Effective Date, the indenture trustee(s) and its(their) agents shall be discharged of all their obligations associated (i) with the 12¼% Secured Notes, the 13% Notes, and the 12% Notes, (ii) the indentures governing the 12¼% Secured Notes, the 13% Notes, and the 12% Notes, and (iii) any related documents, and released from all Claims arising in the Reorganization Cases. As of the Effective Date, the indentures with respect to the 12¼% Secured Notes, the 13% Notes, and the 12% Notes shall be deemed cancelled, except that such cancellation shall not impair the rights of the holders of the 12¼% Secured Notes, the 13% Notes, and the 12% Notes to receive distributions under the Plan, or the rights of the indenture trustees under its (their) charging liens pursuant to the indentures, to the extent that the indenture trustees have not received payment as provided for in section 12.7 of the Plan.

### 4.6. *Reorganized ABIZ Board of Directors*.

The initial Board of Directors of Reorganized ABIZ shall consist of 7 members whose names shall be disclosed at or prior to the Confirmation Hearing. The Secured Noteholder Committee shall appoint four members to the Board of Directors. In addition, the Creditors' Committee shall appoint three members to the Board of Directors, *provided, however*, that one of the Creditor Committee's designees shall be Robert Guth, the Debtors' Chief Executive Officer, provided that he is employed by Reorganized ABIZ; otherwise the other members of the Board of Directors shall designate another member. Initial appointments will be for a term of two years.

### 4.7. *Reorganized Subsidiaries Board of Directors*

The members of the Boards of Directors of the Reorganized Subsidiaries immediately prior to the Effective Date shall serve as the initial members of the Boards of Directors of such Reorganized Subsidiaries on and after the Effective Date. Each of the members of such initial Boards of Directors shall serve in accordance with the applicable Certificates of Incorporation and applicable By-laws, as the same may be amended from time to time.

### 4.8. *Officers of Reorganized Debtors*

The officers of the Reorganized Debtors immediately prior to the Effective Date shall serve as the initial officers of the Reorganized Debtors on and after the Effective Date. Such officers shall serve in accordance with the employment agreements contained within the Plan Supplement with the Reorganized Debtors and applicable law.

### 4.9. *Corporate Action*.

On the Effective Date, Reorganized ABIZ shall file the Amended Certificate of Incorporation and the Reorganized Subsidiaries Certificates of Incorporation with the Secretary of State of the State of Delaware. The Amended Certificate of Incorporation and the Reorganized Subsidiaries Certificates of Incorporation shall prohibit the issuance of nonvoting equity securities, subject to further amendment of such Amended Certificate of Incorporation and Reorganized Subsidiaries Certificates of Incorporation as permitted by applicable law. The Board of Directors shall adopt Amended By-Laws and Reorganized Subsidiaries By Laws, and revise the applicable Reorganized Debtors' charter to be consistent with best corporate practices.

### 4.10. *By-laws and Certificates of Incorporation*

The Amended By Laws, Reorganized Subsidiaries By Laws, Amended Certificates of Incorporation, and the Reorganized Subsidiaries Certificates of Incorporation shall contain provisions necessary to (a) to prohibit the issuance of nonvoting equity securities as required by section 1123(a)(6) of the Bankruptcy Code, subject to further amendment of such certificates of incorporation and by-laws as permitted by applicable law and (b) to effectuate the provisions of the Plan, in each case without any further action by the stockholders or directors of the Debtors, the Debtors in Possession, or the Reorganized Debtors.

## SECTION 5. DISTRIBUTIONS

### 5.1. *Record Date for Distributions*.

By Order dated October 22, 2003, the Bankruptcy Court established October 16, 2003 as the Record Date for voting purposes for the holders of Allowed Claims. As of the Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes made to reflect any new record holders of any Claims or Equity Interests. The Debtors shall have no obligation to recognize any transfer of Claims or Equity Interests occurring on or after such date.

### 5.2. *Date of Distributions*.

Unless otherwise provided herein, any distributions and deliveries to be made hereunder to the holders of Allowed Claims shall be made on the Effective Date or as soon thereafter as is practicable, but in no event later than 90 days following the Effective Date.

### 5.3. *Subsequent Distributions*

Unless otherwise provided in the Plan, to the extent Cash, New Common Stock or New Warrants are available subsequent to the Effective Date from (i) the release of Cash, New Common Stock or New Warrants from the Disputed Claims Reserve or (ii) undeliverable, time-barred or unclaimed distributions to holders of Allowed Claims, the Disbursing Agent shall, on the First Subsequent Distribution Date and each Subsequent Distribution Date thereafter, allocate such Cash, New Common Stock or New Warrants in accordance with the elections made pursuant to Sections 3.6 and 3.7 herein, and between (x) the holders of Allowed General Unsecured Claims that were Allowed Claims on the Effective Date or subsequently have become Allowed on or before the Subsequent Distribution Date and (y) the holders of any still pending Disputed Claims; with the amount allocated to the former then distributed to such holders, the amount allocated to the latter retained in the Disputed Claims Reserve (and administered in accordance with Section 6 of this Plan); *provided, however*, that in no event shall the Disbursing Agent be obligated to make a distribution of such Cash, New Common Stock or New Warrants if, in the reasonable business judgment of the Disbursing Agent, the amount then on hand and the ultimate distribution to be made would not be justified, taking into account all of the attendant costs of such distribution. In such case, any undistributed amount may be held over to the next Subsequent Distribution Date, provided that undistributed amounts for each period will not be held longer than 180 days without approval of the Board of Directors of Reorganized ABIZ in consultation with the Special Board Committee.

### 5.4.   *Surrender of Instruments*.

As a condition to receiving any distribution under the Plan (other than with respect to book entry securities), each holder of 12% Notes, 12¼% Secured Notes, or 13% Notes must surrender such Notes to Reorganized ABIZ or its designee.  Any holder of 12% Notes, 12¼% Secured Notes, or 13% Notes that fails to (a) surrender such instrument or (b) submit evidence satisfactory to the appropriate indenture trustee of the loss, theft, mutilation, or destruction of  such note before the second anniversary of the Effective Date shall be deemed to have forfeited all rights and Claims and may not participate in any distribution under the Plan.  All shares of New Common Stock and New Warrants not distributed as a result of any such forfeiture shall be redistributed in accordance with Section 5.3 -- "Subsequent Distributions" -- of the Plan.

### 5.5.   *Setoffs*.

Except with respect to the Intercompany Claims, the Debtors may, but shall not be required to, setoff against any Claim (for purposes of determining the Allowed amount of such Claim in respect of which distribution shall be made), any claims of any nature whatsoever that the Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim the Debtors may have against the holder of such Claim, *provided*, that in the event the Debtors seek to exercise such setoff rights against the holder of a Claim that is a debtor in a case under the Bankruptcy Code, the Debtors shall comply with the requirements of the Bankruptcy Code, including seeking relief from the automatic stay.

### 5.6.   *Delivery of Distributions*.

Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or their agents, unless the Debtors have been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or interest by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder.  In the event that any distribution to any holder is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such distribution shall be made to such holder; provided that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of the second anniversary from the date of distribution.  After such date, Reorganized ABIZ shall deliver all unclaimed property to the Disbursing Agent for disbursement in accordance with the applicable provisions of the Plan, and the claim of any other holder to such property or interest in property shall be discharged and forever barred.

### 5.7.   *Manner of Payment Under the Plan*.

(a)  All distributions of Cash and Plan Securities to the creditors of each of the Debtors under the Plan of Reorganization shall be made by or on behalf of the applicable Reorganized Debtor.  Where the applicable Reorganized Debtor is a subsidiary of Reorganized ABIZ, Reorganized ABIZ shall be treated as if it were making a capital contribution, either directly or indirectly, to the applicable Reorganized Debtor equal to the amount distributed (other than the Cash distributed from such Reorganized Debtor's own funds), but only at such time as, and to the extent that, the amounts are actually distributed to holders of Allowed Claims, whether directly from the Reorganized Debtor or the Disputed Claims Reserve.

(b)  At the option of the Debtors, any Cash payment to be made hereunder may be made by a check or wire transfer from a domestic bank or as otherwise required or provided in applicable agreements.

5.8.     *No Fractional Distributions*.

No fractional shares of New Common Stock, no fractional New Warrants, no fractional New Management Warrants, nor fractional dollars shall be distributed.  For purposes of distribution, fractional shares of New Common Stock, fractional New Warrants, and fractional New Management Warrants shall be rounded up or down, as applicable, to the nearest whole number, or, in the event of a Cash payment, up or down, to the nearest whole dollar.

5.9.     *Distributions After Effective Date*.

Distributions made after the Effective Date to the Disputed Claims Reserve for the benefit of the holders of Disputed Claims that later become Allowed Claims shall be deemed to have been made on the Effective Date.

5.10.     *Potential Actions Against ACC*.

One or more of the Plan Proponents intend to assert certain causes of action against ACC, for the benefit of Reorganized ABIZ.  Any settlement of Claims against ACC occurring post-Effective Date, as well as the use of proceeds from recoveries, if any, realized from the prosecution or settlement of any such actions shall (i) require the consent of five (5) members of the Board, and (ii) be excluded from the Collateral securing any Claims of the Debtors' exit facility and other post-Effective Date lenders.

5.11.     *Withholding and Reporting Requirements*.

In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

5.12.     *Time Bar to Cash Payments*.

Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof.  Any party that is entitled to receive a check under this Plan but that fails to cash such check within 120 days of its issuance shall be entitled to receive a reissued check from Reorganized ABIZ for the amount of the original check if the party requests that the Disbursing Agent reissue such check and provides the Disbursing Agent, with such documentation as the Disbursing Agent requests to verify that such party is entitled to such check, prior to the later of (a) the second anniversary of the Effective Date or (b) six (6) months after any such Claim becomes an Allowed Claim.  If a party fails to cash a check within 120 days of its issuance and fails to request reissuance of such check prior to the later to occur of (a) the second anniversary of the Effective Date or (b) six (6) months following the date such party's Claim becomes an Allowed Claim, such party shall not be entitled to receive any Distribution under this Plan with respect to the amount of such check.

### 5.13. *Transactions on Business Days*.

If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

### 5.14. *Minimum Distributions*.

There shall be no distribution to any holder of a Claim in an aggregate face amount of $500 or less unless a request therefor is made in writing to the Disbursing Agent (at the addresses provided in the Plan). Any undistributed amount shall be held over to the next Subsequent Distribution Date.

### 5.15. *Allocation of Distributions*.

Distributions to any holder of an Allowed Claim shall be allocated first to the principal portion of any such Allowed Claim (as determined for federal income tax purposes), and, only after the principal portion of any such Allowed Claim is satisfied in full, to any portion of such Allowed Claim comprising prepetition interest (but solely to the extent that interest is an allowable portion of such Allowed Claim).

### 5.16. *Rights and Powers of Disbursing Agent*.

(a) All distributions under the Plan shall be made by Reorganized ABIZ as Disbursing Agent or such other entity designated by Reorganized ABIZ as a Disbursing Agent. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court; and, in the event that a Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by Reorganized ABIZ.

(b) The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan, (ii) make all distributions contemplated hereby, (iii) employ professionals to represent it with respect to its responsibilities, and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

(c) Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including, without limitation, taxes) and any reasonable compensation and expense reimbursement claims (including, without limitation, reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by Reorganized ABIZ.

## SECTION 6.  PROCEDURES FOR TREATING DISPUTED CLAIMS

### 6.1. *No Distribution Pending Allowance*.

Notwithstanding any other provision of the Plan, no Cash, New Common Stock, nor New Warrants shall be distributed under the Plan on account of any Disputed Claim, unless and until such Claim becomes an Allowed Claim.

6.2. **_Reserve Account for Disputed Claims_**.

On and after the Effective Date, the Disbursing Agent shall hold in the Disputed Claims Reserve, Cash, New Common Stock, and New Warrants in an aggregate amount sufficient to compensate each holder of a Disputed Claim with the amount that such holder would have been entitled to receive under the Plan if such Claim had been an Allowed Claim on the Effective Date or any Subsequent Distribution Date.

6.3. **_Resolution of Disputed Claims_**.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Debtors (in consultation with the ABIZ Committees) and, after the Effective Date, Reorganized ABIZ, in consultation with the Special Board Committee, shall have the right to the exclusion of all others (except (i) as to applications for allowances of compensation and reimbursement of expenses under sections 330 and 503 of the Bankruptcy Code and (ii) certain Claims that the Plan Proponents have agreed will be objected to by the Creditors' Committee and/or the Secured Noteholder Committee), to make and file objections to Claims and shall serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable, but in no event later than 120 days after the Confirmation Date. From and after the Effective Date, all objections shall be litigated to a Final Order except to the extent Reorganized ABIZ elects to withdraw any such objection or Reorganized ABIZ and the claimant elect to compromise, settle , or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim without the necessity of Bankruptcy Court approval.

6.4. **_Estimation of Claims_**.

The Debtors and/or either of the ABIZ Committees may request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors have previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time. In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount may constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. On and after the Confirmation Date, Claims that have been estimated may be compromised, settled, withdrawn, or otherwise resolved subsequently, without further order of the Bankruptcy Court.

6.5. **_Allowance of Disputed Claims_**.

If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall, on the fifteenth Business Day of the first month following the month in which the Claim becomes an Allowed Claim, distribute from the Disputed Claims Reserve to the holder of such Allowed Claim, Cash, New Common Stock, and/or New Warrants, as applicable, in an aggregate amount sufficient to provide each holder of a Disputed Claim with the amount that such holder would have been entitled to receive under the Plan if such Claim had been an Allowed Claim on the Effective Date or any Subsequent Distribution Date.

6.6. **_Release of Funds from Disputed Claims Reserve_**.

To the extent a Disputed Claim is disallowed, the Cash, New Common Stock or New Warrants that would otherwise be distributed pursuant to section 6.5 hereof will instead be re-distributed

in the manner described in Section 5.3 of the Plan, to the holders of Allowed Claims and to the Disputed Claims Reserve, on behalf of holders of Disputed Claims, such that each such holder receives its Ratable Proportion of such subsequent distribution.

6.7. ***Investment of Disputed Claims Reserve; Expenses***.

The Disbursing Agent shall be permitted, from time to time, in consultation with Reorganized ABIZ, to invest all or a portion of the Cash in the Disputed Claims Reserve in United States Treasury Bills, interest-bearing certificates of deposit, tax exempt securities or investments permitted by section 345 of the Bankruptcy Code or otherwise authorized by the Bankruptcy Court, using prudent efforts to enhance the rates of interest earned on such Cash without inordinate credit risk or interest rate risk. Reorganized ABIZ shall be entitled to all interest and other accretions earned on any Cash held for distribution on account of Disputed Claims, and any such interest and other accretions shall be payable, at least annually, to Reorganized ABIZ. Reorganized ABIZ shall report any such interest and other accretions in its income on a current basis. Reorganized ABIZ shall be responsible for all costs and expenses of the Disputed Claims Reserve.

6.8. ***Expedited Determination of Taxes***.

The Disbursing Agent may request an expedited determination of taxes of the Disputed Claims Reserve, under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of the Disputed Claims Reserve for all taxable periods through the dissolution of the Disputed Claims Reserve.

## SECTION 7. **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

7.1. *General Treatment*.

All executory contracts (including any option or warrant to purchase common stock of any of the Debtors to the extent such option or warrant is determined not to be an Equity Interest) and unexpired leases to which any of the Debtors are parties are hereby rejected, except for an executory contract or unexpired lease that (a) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court, (b) is specifically designated or generally described on Schedule 7.1 hereto as a contract or lease to be assumed, or (c) is the subject of a separate motion filed under section 365 of the Bankruptcy Code by the Debtors prior to the Effective Date. For purposes hereof, each executory contract and unexpired lease listed or generally described on Schedule 7.1 hereto that relates to the use or occupancy of real property shall include (a) modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is listed on Schedule 7.1 hereto and (b) executory contracts or unexpired leases appurtenant to the premises listed on Schedule 7.1 hereto including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vault, tunnel or bridge agreements, or franchises, and any other interests in real estate or rights *in rem* relating to such premises to the extent any of the foregoing are executory contracts or unexpired leases, unless any of the foregoing agreements are specifically rejected. A non-Debtor party to an executory contract or unexpired lease that is being rejected hereunder may request that the Debtors assume such contract or lease by sending written notice to the Debtors, which notice shall include a waiver of any defaults (including any payment defaults) and any right to any cure payment under such contract or lease. The Debtors may assume such contract or lease without further action of the Bankruptcy Court. The Debtors reserve their right to add any executory contract or unexpired lease to Schedule 7.1 prior to the Effective Date.

### 7.2. *Cure of Defaults*.

Except to the extent that different treatment has been agreed to by the nondebtor party or parties to any executory contract or unexpired lease to be assumed pursuant to section 7.1 hereof, the Debtors shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, on or before the Confirmation Date, file a pleading with the Bankruptcy Court listing the cure amounts of all executory contracts to be assumed, with such cure amounts to be determined in consultation with the ABIZ Committees. The parties to such executory contracts to be assumed by the Debtors shall have 30 days to object to the cure amounts listed by the Debtors. If there are any objections filed, the Bankruptcy Court shall hold a hearing. In the event the Bankruptcy Court determines that the cure amount is greater than the cure amount listed by the Debtors, the Debtors may reject the contract at such time rather than paying such greater amount.

### 7.3. *Rejection Claims*.

In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, or their respective properties or interests in property as agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtors on or before the date that is 30 days after the later of the Effective Date or the date of such rejection.

## SECTION 8. ACCEPTANCE OR REJECTION OF THE PLAN

### 8.1. *Voting of Claims*.

Each holder of an Allowed Claim in an impaired Class of Claims shall be entitled to vote to accept or reject the Plan as provided for in the order entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan (a copy of which will be distributed together with the Disclosure Statement). Each holder of an Allowed Claim in Classes 6 and 7, as described more fully in Sections 3.6 and 3.7 above, may elect on its Ballot to receive either (a) a Stock and/or Warrant Recovery, except to the extent that a holder of an Allowed General Unsecured Claim against any of the Debtors has agreed to a less favorable treatment of such Claim, or (b) a Cash Recovery in full satisfaction of such Allowed Claim, *provided, however,* that (i) the failure by a holder of an Allowed Claim in Classes 6, 7A, 7B, 7C, or 7D to either: (a) submit a Ballot, or (b) specify on the Ballot such holder's elected treatment shall result in such holder receiving a Cash Recovery, as described in sections 3.6 and 3.7, as applicable, and (ii) a holder that submits a Ballot and elects their desired treatment, but fails to indicate whether they accept or reject the Plan, will still receive its desired treatment. For purposes of calculating the number of Allowed Claims in a Class of Claims that have voted to accept or reject the Plan under section 1126(c) of the Bankruptcy Code, all Allowed Claims in such Class held by one entity or any affiliate thereof (as defined in the Securities Act of 1933 and the rules and regulations promulgated thereunder) shall be aggregated and treated as one Allowed Claim in such Class.

### 8.2. *Acceptance by a Class of Creditors*.

Consistent with section 1126(c) of the Bankruptcy Code and except as provided for in section 1126(e) of the Bankruptcy Code, a Class of creditors shall have accepted the Plan if it is accepted

by at least two-thirds in dollar amount and more than one-half in number of the holders of Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

8.3.    ***Presumed Rejections of Plan and Cram Down***.

For purposes of voting on the Plan, each holder of an Allowed ACC DIP Claim in Class 5, an Allowed Securities Claim in Class 9, an Allowed Equity Interest in Class 11, and an Allowed Subordinated Claim in Class 13 is conclusively presumed to have rejected the Plan.  The Debtors shall utilize the provisions of section 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of the Plan over the presumed rejections of such Class and the rejection, if any, of any other Class entitled to vote to accept or reject the Plan.

SECTION 9.    **CONDITION PRECEDENT TO THE EFFECTIVE DATE**

9.1.    ***Conditions to Confirmation***.

(a)  This Plan may not be confirmed unless each of the conditions set forth below is satisfied.  Except as provided in Section 9.3 below, any one or more of the following conditions may be waived at any time by the Debtors with the consent of the Creditors' Committee and the Secured Noteholder Committee.

(b)  An Order finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been issued by the Bankruptcy Court.

(c)  The Confirmation Order shall be in a form reasonably acceptable to the Plan Proponents.

9.2.    ***Conditions to Occurrence of Effective Date***.

(a)  The Effective Date for this Plan may not occur unless each of the conditions set forth below is satisfied.  Except as provided in Section 9.3 below, any one or more of the following conditions may be waived at any time by the Debtors with the consent of the Creditors' Committee and the Secured Noteholder Committee.

(b)  A Confirmation Order, in form and substance reasonably satisfactory to the Plan Proponents, shall have been entered by the Bankruptcy Court and no stay of the Confirmation Order shall then be in effect.

(c)  All Plan Documents shall be in form and substance satisfactory to the Plan Proponents and, where applicable, shall fully incorporate the terms of the Private Company Term Sheet.

(d)  All actions, other documents, and agreements necessary to implement the Plan shall be executed and delivered on the Effective Date.

(e)  Plan Securities being issued to fewer than 300 holders of record pursuant to the Plan.

(f)  The Debtors shall have obtained exit financing, to the extent necessary, in an amount and on terms satisfactory to each of the ABIZ Committees.

(g)  Any settlements reached with any holder of a Claim prior to the Effective Date that provides for special treatment of such holder's Claim in lieu of the treatment otherwise accorded to such Claim under the Plan shall be in form and substance satisfactory to each of the ABIZ Committees.

(h)  An order, which may be the Confirmation Order, substantively consolidating the Reorganization Cases shall have been entered.

(i)  All amounts required to be paid to Beal Bank pursuant to sections 3.4 and 2.1 shall have been paid in full in cash.

### 9.3.    *Waiver of Conditions*.

The Debtors may, at their option, but only with the written consent of the Creditors' Committee and the Secured Noteholder Committee, waive the conditions set forth in Sections 9.1 and 9.2, *provided, however*, that the Debtors may not waive entry of the Order approving the Disclosure Statement, entry of the Confirmation Order, or any condition the waiver of which is proscribed by law. Any such waivers shall be evidenced by a writing, signed by the waiving parties, and served upon counsel for the Creditors' Committee, the Secured Noteholder Committee, and the United States Trustee and filed with the Bankruptcy Court.  The waiver may be a conditional one, such as to extend the time under which a condition may be satisfied.

### 9.4.    *Effect of Failure of Conditions*.

In the event that the conditions specified in Section 9.2 have not been satisfied or waived in the manner provided in Section 9.3 within ninety days following the Confirmation Date, then upon written notification filed by the Debtors with the Bankruptcy Court and served upon counsel for the Creditors' Committee, the Secured Noteholder Committee, and the United States Trustee, (a) the Confirmation Order shall be vacated, (b) no distributions under the Plan shall be made, (c) the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (d) all the Debtors' obligations with respect to the Claims and Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

## SECTION 10.  EFFECT OF CONFIRMATION

### 10.1.    *Vesting of Assets*.

Upon the Effective Date, except as otherwise provided herein, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' bankruptcy estates shall vest in the Reorganized Debtors free and clear of all Claims, liens, encumbrances, charges, and other interests, except as provided herein or in the Confirmation Order.  The Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as provided herein.

### 10.2.    *Discharge of Claims and Termination of Equity Interests*.

Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts and

Claims, and terminate all Equity Interests, of any kind, nature, or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in the Plan, upon the Effective Date, all existing Claims against the Debtors and Equity Interests in ABIZ, shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Debtors, or any of their assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of equity interest.

10.3.  *Discharge of Debtors*.

Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Equity Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, rights and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Equity Interest in the Debtors.

10.4.  *Term of Injunctions or Stays*.

Unless otherwise provided, all injunctions or stays arising under or entered during the Reorganization Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

10.5.  *Injunction Against Interference with Plan*.

Upon the entry of a Confirmation Order with respect to the Plan and, except as otherwise provided herein or with respect to an appeal of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

10.6.  *Exculpation*.

On the Effective Date, the respective current officers, current directors, current employees, current members, current financial advisors, current professionals, current accountants, and current attorneys, as applicable, of the Debtors, the Creditors' Committee, the Secured Noteholder Committee, Beal Bank, and any disbursing agent selected by the Debtors shall be exculpated by the Debtors and any holder of any Claim or Interest for any act or omission in connection with, or arising out of, the Reorganization Cases, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or property to be distributed under the Plan, except for willful misconduct, gross negligence, intentional fraud, criminal conduct, misuse of confidential information that causes damages to the estate, and/or *ultra vires* acts. Nothing in this Section 10.6 shall limit the liability of the professionals to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility.

10.7.  *Limited Releases*

On the Effective Date, any and all Claims of the Debtors (except for willful misconduct, breach of fiduciary duty that results in a personal profit at the expense of the Debtors' estates, gross

negligence, intentional fraud, criminal conduct, misuse of confidential information that causes damages to the estates, and/or *ultra vires* acts) against the current officers and current directors of the Debtors and any of their non-Debtor subsidiaries, the Creditors' Committee, the Secured Noteholder Committee, the indenture trustees for the 12% Notes, 13% Notes, and 12¼% Secured Notes, Beal Bank, and each of their respective current agents, current employees, current advisors (including any attorneys, financial advisors, investment bankers and other professionals retained by such persons or entities), and current representatives shall be released by the Debtors; *provided, however,* that the foregoing shall not operate as a waiver of or release from any Claim arising out of any express contractual obligation owing by any former director, officer, or employee of the Debtors or any reimbursement obligation of any former director, officer, or employee with respect to a loan or advance made by the Debtors to such former director, officer, or employee; and *provided further, however,* nothing herein or in the Confirmation Order shall affect a release of any claim against the parties released in this Section 10.7 by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code of 1986, the environmental laws, or any criminal laws of the United States or any state and local authority, nor shall anything herein or in the Confirmation Order enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceeding against any such person or entity for any liability whatsoever, including, without limitation, any claim, suit, or action arising under the Internal Revenue Code of 1986, the environmental laws, or any criminal laws of the United States or any state or local authority. Nothing in this Section 10.7 shall limit the liability of the professionals to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility.

10.8. *Avoidance Actions*.

Reorganized ABIZ or one or both of the ABIZ Committees, as may be agreed to by the Plan Proponents shall have the right to prosecute any avoidance or recovery actions under sections 542 through 551, and 553 of the Bankruptcy Code that belong to the Debtors or debtors in possession. The proceeds of such actions shall be retained by the Reorganized Debtors.

10.9. *Injunction Regarding Worthless Stock Deduction*.

Unless otherwise ordered by the Bankruptcy Court, on and after the Confirmation Date, any "fifty percent shareholder" within the meaning of section 382(g)(4)(D) of the Internal Revenue Code of 1986, as amended, shall be enjoined from claiming a worthless stock deduction with respect to any Equity Interests for any taxable year of such shareholder ending prior to the Effective Date.

SECTION 11. **RETENTION OF JURISDICTION**

11.1. *Jurisdiction of the Bankruptcy Court*.

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Reorganization Cases for, among other things, the following purposes:

(a) To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom.

(b) To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on the Confirmation Date.

(c)  To ensure that distributions to holders of Allowed Claims are accomplished as provided herein.

(d)  To consider Claims or the allowance, classification, priority, compromise, estimation, objection to, or payment of any Claim, Administrative Expense Claim, or Equity Interest.

(e)  To hear and determine all actions pursuant to sections 505, 542, 543, 544, 545, 547, 548, and 549 of the Bankruptcy Code, collection matters related thereto, and settlements thereof.

(f)  To hear and determine any disputes or issues arising under the settlement agreements referred to in this Plan or any other settlements of claims approved by the Bankruptcy Court.

(g)  To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated.

(h)  To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court.

(i)  To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof.

(j)  To hear and determine all applications of retained professionals under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date.

(k)  To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby or any agreement, instrument, or other document governing or relating to any of the foregoing.

(l)  To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation.

(m) To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

(n)  To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, but not limited to, an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtors or the Disputed Claims Reserve for all applicable tax periods).

(o)  To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

(p)  To enter a final decree closing the Reorganization Cases.

(q)  To recover all assets of the Debtors and property of the Debtors' estates, wherever located.

SECTION 12.  **MISCELLANEOUS PROVISIONS**

12.1.  *Payment of Statutory Fees*.

On the Effective Date, and thereafter as may be required, the Debtors shall pay in Cash all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

12.2.  *Compensation and Reimbursement Claims*.

All entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (a) shall file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred on or before the date that is 60 days after the Effective Date and (b) shall be paid in full in such amounts as are allowed by the Bankruptcy Court (i) on the date upon which the order relating to any such Administrative Expense Claim becomes a Final Order or (ii) upon such other terms as may be mutually agreed upon between such holder of an Administrative Expense Claim and the Debtors or, on and after the Effective Date, Reorganized ABIZ.  The Debtors are authorized to pay compensation for services rendered and reimbursement of expenses incurred after the Confirmation Date and until the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.  Without limiting the foregoing, the Reorganized Debtors shall pay the charges they may incur for reasonable professional fees, disbursements, expenses, or related support services after the Effective Date without any application to the Court.

12.3.  *Dissolution of Creditors' Committee*.

On the Effective Date, the Creditors' Committee will dissolve and the members of the Creditors' Committee will be released and discharged from all duties and obligations arising from or related to the Reorganization Cases.  The professionals retained by the Creditors' Committee and the members of the Creditors' Committee thereof and the professionals retained by the Secured Noteholder Committee will not be entitled to compensation or reimbursement of expenses for any services rendered after the Effective Date, except for services rendered and expenses incurred in connection with any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed and served after the Effective Date, or for any services requested by Reorganized ABIZ.

12.4.  *Creation of Special Board Committee*

On the Effective Date, a member of the Board of Directors, selected by the Secured Noteholder Committee, and a member of the Board of Directors, selected by the Creditors' Committee, and Robert Guth, the Debtors' Chief Executive Officer, shall be appointed as a Special Board Committee. The Special Board Committee's responsibilities shall consist of overseeing and reporting to the Board of Directors with respect to matters affecting distributions to holders of Claims under the Plan.

12.5.  *Recognition of Guaranty Rights*.

The classification of and manner of satisfying all Claims and Equity Interests under the Plan takes into consideration (i) the existence of guaranties by the Debtors, and (ii) the fact that the Debtors may be joint obligors with each other or other entities, with respect to an obligation.  All Claims

against any of the Debtors based upon any such guaranties or joint obligations shall be discharged in the manner provided in the Plan.

### 12.6. *No Deemed Waiver of Causes of Action.*

Notwithstanding any payment on account of an Allowed Claim to a creditor or a settlement with a creditor with respect to a Disputed Claim, unless expressly provided, there shall be no deemed waiver of any rights of any Debtor or any other party in interest to bring a cause of action, including, without limitation, a subsequent avoidance action, against such creditor.

### 12.7. *Certain Indenture Trustee Fees and Expenses.*

The Debtors shall satisfy in Cash, and to the extent contingent, disputed, or unliquidated on the Effective Date, shall include in the Disputed Claims Reserve, Cash in an amount sufficient to satisfy the reasonable fees and expenses of each of the indenture trustees prior to the Effective Date, including the reasonable fees and expenses of their professionals. Each indenture trustee shall submit its actual and estimated fees (through the Effective Date) to the Debtors and the ABIZ Committees at least twenty-five (25) days prior to the Confirmation Hearing, and the reasonableness of such fees and expenses shall be determined first by the Debtors and the ABIZ Committees. To the extent there are any disputes regarding the reasonableness of payment of such fees and expenses under this section, such dispute shall be submitted to the Bankruptcy Court for resolution. Nothing herein shall be deemed to impair, waive, or discharge the indenture trustees' respective rights, liens, and priorities or any other rights of the indenture trustees under their respective indentures against the distributions to the holders of the 12¼% Secured Notes, 13% Notes, and 12% Notes.

### 12.8. *Expedited Determination of Taxes*

The Reorganized Debtors may request an expedited determination of taxes of the Reorganized Debtors under section 505(b) of the Bankruptcy Code for all returns file for, or on behalf of, the Reorganized Debtors for all taxable periods through the Effective Date.

### 12.9. *Exemption from Transfer Taxes*

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or issuance of debt or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, or other similar tax. All sale transactions specifically provided for by this Plan, or consummated by the Debtors and approved by the Bankruptcy Court on and after March 27, 2002, including, without limitation, (i) the sales by or to the Debtors of property or assets pursuant to section 363(b) of the Bankruptcy Code, (ii) the assumptions, assignments, and sales by the Debtors of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, and (iii) settlements pursuant to Bankruptcy Rule 9019(a), shall be deemed to have been made under, in furtherance of, or in connection with the Plan and, therefore, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, or other similar tax.

12.10. *Substantial Consummation*.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

12.11. *Amendments.*

(a) *Plan Modifications*. The Plan may be amended, modified, or supplemented by the Debtors, with the prior written consent of each of the ABIZ Committees, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct. In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under the Plan, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

(b) *Other Amendments*. Prior to the Effective Date and with the consent of the Creditors' Committee and the Secured Noteholder Committee, which consent shall not be unreasonably withheld, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

12.12. *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit hereto provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

12.13. *Severability*.

In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Plan Proponents, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The confirmation order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.14. *Headings*.

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

12.15.  *Exhibits*.

All Exhibits and Schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

12.16.  *Time*.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

12.17.  *Notices*.

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Adelphia Business Solutions, Inc.
712 N. Main Street
Coudersport, Pennsylvania  16915
Attn:  John Glicksman, Esq.
Secretary and General Counsel
Telephone:  (814) 260-8000
Telecopier:  (814) 260-2026

- and -

Weil, Gotshal & Manges LLP
Attorneys for Debtors and
Debtors in Possession
767 Fifth Avenue
New York, New York  10153
Attn:  Judy G.Z. Liu, Esq.
Telephone:  (212) 310-8000
Telecopier:  (212) 310-8007

- and -

Kramer Levin Naftalis & Frankel, LLP
Attorneys for the Creditors' Committee
919 Third Avenue
New York, New York 10022
Attn: Mitchell A. Seider, Esq.
     Amy Caton, Esq.
Telephone: (212) 715-9100
Telecopier: (212) 715-8000

- and -

Akin Gump Strauss Hauer & Feld, LLP
Attorneys for the Secured Noteholder Committee
590 Madison Avenue, 20th Floor

New York, New York 10022
Attn: Ira S. Dizengoff, Esq.
Telephone: (212) 872-1000
Telecopier: (212) 872-1002

- and -

Jenkens & Gilchrist Parker Chapin, LLP
Attorneys for Beal Bank
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Attn: Hollace T. Cohen, Esq.
Telephone: (212) 704-6000
Telecopier: (212) 704-6288

Dated:  New York, New York
         December 8, 2003

Respectfully submitted,

ADELPHIA BUSINESS SOLUTIONS, INC.
(for itself and on behalf of each of the Debtors)

By:      /s/ Ed Babcock
Name:  Ed Babcock
Title:   Chief Financial Officer